and Juan Rivera Jr. et al. On behalf of the City of Waukegan, Ms. Paulette A. Petretti. On behalf of Mr. Rivera is Mr. J. Samuel Tenenbaum. And on behalf of Indian Harbor Insurance is Mr. Mark A. Krieger. Thank you. The clerk informs me that you have some out-of-state jurisdiction. You can hand whatever, as long as there's no objection, hand it to the clerk and we'll bring it up to the court. Thank you. Ms. Petretti, you may proceed when you're ready. Good morning, Your Honors. May it please the court. Paulette Petretti on behalf of Appellants City of Waukegan, Davis, Meadey, Pratt, Shipley, Stevenson, and Testament. I'm going to be taking the first ten minutes of this opening argument and then we'll turn it over to Mr. Rivera's attorney for the last five minutes. Your Honors, this is an insurance coverage case and therefore of the utmost importance are the provisions in the insurance policy. Indian Harbor sold Waukegan a law enforcement liability policy. This is a special risk policy that covered activities for the law enforcement personnel. The policy, the most important provisions are the insuring provision. And in the Indian Harbor policy, the insuring provision provides that it will cover damages resulting from wrongful acts arising out of law enforcement activities. And the insuring agreement also included that the wrongful acts must occur within the policy period. In the insuring agreement, there is also a duty to defend provision. Now, after the insuring agreement, the most important thing that the insurer looks at is what are the defined wrongful acts that are in the policy. And in reviewing the policy, the wrongful acts are delineated under the definition of personal injury. And this is not uncommon in law enforcement liability policies. The personal injury definition includes the definition that injuries arise from, and then it lists a delineation of wrongful acts. And those usually include assault, battery, false arrest, detention, malicious prosecution. Counsel, may I interrupt you to ask a question, please? You were asked to consider the St. Paul Fire and Marine Insurance Company case. And so following this court's decision in St. Paul, do you still think that security mutual should play any part in our decision in this case? Your Honor, I think security mutual lays out a broad rule of law with regard to malicious prosecution. And I think it has relevance in that it deals with the underlying criminal definition of malicious prosecution. And it deals with the tort or offense of malicious prosecution. Well, it was focused, was it not, on the elements of malicious prosecution in St. Paul? In St. Paul, we really felt that that wasn't the appropriate focus, correct? It was what happened during the policy period, not necessarily the last element of exoneration as part of malicious prosecution. Yes, Your Honor. So in light of that discussion in St. Paul, why is security mutual still relevant? I think it's still relevant because it deals with the tort or the offense or the wrongful act of malicious prosecution. And I understand in St. Paul, the analysis there looked at the particular language of the St. Paul policy, which is different than the language in Indian Harbor's policy. How is it different? Maybe you can point that difference out to us. The St. Paul policy in the insuring agreement, it provided coverage for injuries that occurred during the policy period. So the focus in St. Paul was on when the injury occurred. Right. And in Indian Harbor, it's on? When the wrongful act occurred. Which results in personal injury. That's right, Your Honor. Correct? Meaning malicious prosecution. Well, when you say meaning, we take... Well, that's the quoted language. It means it's the definition in the Indian Harbor policy. And Your Honor, we take issue with that and we have addressed that in our briefs. If you accept Indian Harbor's interpretation of the policy that personal injury is assault, battery, malicious prosecution, there is no definition in the policy at all for wrongful acts. I mean, it would be a completely illusory policy if you accepted Indian Harbor's interpretation. The insuring agreement says that the policy covers wrongful acts. There has to be a delineation in the policy of wrongful acts. Otherwise, what is the insured buying? It would be buying absolutely nothing. There would never be any coverage. So is the wrongful act in this policy the completed tort of malicious prosecution? Yes, Your Honor. And the other delineated torts that are listed under the definition of personal injury. You argued in your brief that we should read into this policy the language, injury resulting from malicious prosecution. Yes, Your Honor. So if a wrongful act is the injury resulting from malicious prosecution, why is this different from St. Paul? The wrongful act is not the injury. The policy says that a wrongful act is an actual or alleged error that results in personal injury, bodily injury, or property injury. So it results in. The wrongful act is not the personal injury. The wrongful act is an event that results in personal injury. And that's why if you accept Indian Harbor's interpretation, the policy is completely meaningless. There has to be some definition of wrongful acts, and those are delineated. Why do you say the policy is meaningless? Because if you take the way they read the policy, it's covering wrongful acts that are being committed during the policy period. So if anybody 20 years from now were to sue what happened during this two-year period of time, there would be coverage. That's what their argument is. Why do you say it's illusory? It's illusory to you based on this claim, but why is it illusory? Because there is no definition of wrongful acts if you accept their definitions. They are saying that personal injury is malicious prosecution, false arrest, and there is no definition because the policy is covering wrongful acts that result in personal injury. So there's a separation. Revere alleged many wrongful acts in this federal complaint. Yes. And the trial court found that none of those wrongful acts took place during the policy period. They all took place earlier in time. Which we disagree with because the complete malicious prosecution, under the policy, the wrongful acts have to be actual or alleged errors or omissions. Malicious prosecution does not become actual until all the elements are in place. So you disagree with Mueller that says that the essence of a malicious prosecution is when the person is arrested without probable cause? Yes, Your Honor. So you disagree with that holding in that case? Because like in American Safety and in Security Mutual, they deal with the entire tort, which actualizes at the time that all the elements are present. Would you agree that the policy language in American Safety is much more clearly defines the coverage as the completed tort of malicious prosecution than this policy? I think there are quite a few similarities. And I think they, except for... Well, I think that this policy defines it as well as the wrongful act as the completed tort. It's just that Indian Harbor has taken, we believe, it has adjusted its policy by taking out the words arising from, personal injury arising from, these torts. The other inconsistencies in the policy, Your Honor, are that there are delineated, under the definition of occurrence, events that are considered one occurrence. And malicious prosecution is not among them. And if you accept their interpretation, there are no independent torts. False arrest is a different tort. We've always said that. That is a different tort than malicious prosecution. And we rely, in our briefs, on the seminal cases, Heck v. Humphrey and Wallace v. Cato, who the Supreme Court, U.S. Supreme Court, has clearly delineated that those torts are independent torts that have to be analyzed separately. I mean, if you collapse everything together, and that's what Indian Harbor has done, they say everything happens at the beginning. The policy is completely meaningless because each false arrest is delineated separately from malicious prosecution. They are separate torts that have to be dealt with separately. Well, but doesn't a wrongful act have to precede the injury? No. No, I don't know that there's any law there. Because malicious prosecution is a tort, and I think that many cases have said, it's sui generis, that it is, all the elements don't fall into place as they do in negligence. But this is not negligence. But the last step, the exoneration, really doesn't fit into any definition of a wrongful act. I mean, unless, as you're saying, you have to look at it as the completed tort, but that's not very logical. Your Honor, my 10 minutes is up. Can I just answer that question? Sure. The exoneration is only one element in the tort of malicious prosecution, and so it is not the wrongful act. The wrongful act is the tort, which is malicious prosecution. If there are no further questions, I will... Thank you, Counselor. You will have time for a follow-up. Thank you, Your Honor. Mr. Tenenbaum, you may proceed. Good morning, Your Honors. Sam Tenenbaum on behalf of Juan Rivera, and please, the Court. It seems to me what's gotten lost in the decision and the discussion of the case is the fact that Rivera's complaint has other allegations besides malicious prosecution. In Count 4, the First Amendment complaint, and by the way, just for notice to the Court, we're on the Third Amendment complaint as a result of discovery that's been conducted. But in the First Amendment complaint, which is before this Court, we have Count 4, which alleges Brady violations. Count 5 alleges conspiracy to deprive constitutional rights. Count 6 alleges a failure to intervene. Those three counts are based on Section 1983 in the United States Constitution. Count 8 is intentional infliction of emotional distress. And Count 11 is Joaquin's responsibility under the Doctrine of Respondee at Superior. All of these counts have been upheld as legitimately pled by Judge Lyon Webber in the federal court. There was a motion to dismiss. That motion was denied. Then let's look at the policy. I get out of the city's brief, and maybe I'm misreading this, that the second and the third issue, the failure to intervene and the conspiracy, the city reads those as being based on malicious prosecution. Do you disagree with that? Yes, they're separate claims. They're separate claims. And within those counts are allegations that the wrongful acts continued all the way up until the exoneration. And there are specific allegations of that. If you look at, for example, Paragraph 145 of the First Amendment complaint, there's a specific allegation of that. Now, didn't national casualty say that state law claims for false arrest, intentional infliction of emotional distress, and conspiracy accrue when the defendant was arrested? It dealt with false imprisonment. And that's precisely the quote that was in the plaintiff's brief, appellee's brief. That was the quote. But that has nothing to do, all right, let's assume that that's correct. I'm not sure that that's exactly what national casualty said. Let's assume that's correct. That says nothing about the constitutional claims containing counts four, five, and six. That law certainly doesn't apply to federal claims. Your argument is that these were ongoing from the point of the arrest until the exoneration. The law of Brady, as we indicated in our brief, the law of Brady is very clear. There's a duty before trial, at trial, after trial, during the appellate process. We have the quintessential case here in Rivera because there were three trials and three appeals. They extended through an extended period of time until the final exoneration by this court. If you look at the policy, section 13 defines wrongful acts. And what it says is that an actual or alleged, that's important, all you have to do is make an allegation. Allegation that falls within the policy or alleged error or omission, negligence, or breach of a duty while conducting law enforcement activities that causes a personal injury. All right. The personal injury in section nine is not just false arrest, detention, imprisonment, or malicious prosecution, which is contained in section B. There's also a separate personal injury for humiliation or mental distress. And in paragraph 9F, there is a personal injury includes violations of civil rights or discrimination under 1981 S. Which includes section 1983 claims. Those are separated out in their language, their policy. This is how the appellee wrote the policy. They could have certainly defined it however they wanted in the policy. They chose to define it this way. And then as Mr. Treddy mentioned, when you look at occurrences, they have certain, in section 8, there are four certain defined acts that are set out as being considered one occurrence. So they certainly knew how to draft an exception if you wanted to say Brady claims shall accrue when the first arrest occurs or malicious prosecution shall occur at the time of arrest. They could have drafted it that way. In fact, at the time these policies were drafted, the Seventh Circuit, many courts, and I'm certain municipalities believed that the Illinois case law was such that... You can finish your thought. I think I used five. You can finish your thought. Is that my time? All right. Let me just sum up, if I might, just for a moment. The argument that was presented on the other side is we didn't allege enough facts. First of all, in a federal pleading, it's different than Illinois State. We don't have to allege every single act. There are, as I pointed out, as we pointed out in our briefs, specific acts that were in fact alleged. The trial court never even mentioned the word Brady. It just lumped all the other claims together and said, well, you didn't allege enough facts. And that's basically the position that was relied on in the briefs by the appellee. We feel that that is not a careful analysis of what's alleged in the complaint and compare it to what is required under the policy. And if you do that, we believe this court needs to reverse. Thank you, Mr. Farrell. Mr. Krueger, you may proceed. May it please the court, good morning. My name is Mark Krueger. I'm here on behalf of Indian Harbor Insurance Company. I'd also like to acknowledge a counsel, David R. Gay, who's worked with me on this case. We acknowledge receipt of the court's order asking this morning's argument to focus, as Justice Zenoff mentioned, on the St. Paul Fire and Marine case, and that's what I intend to do during my arguments this morning. Can I just ask you one quick question first? Certainly. Before I forget, Mr. Tenenbaum was talking about the Brady violation claims, and that clearly brought this within the scope of the policy. Well, I think as the court below indicated, as Judge Ortiz indicated, they haven't alleged anything that happened during the policy period. Policy period here commenced on November 1, 2011. There's no allegations anywhere in the complaint that anything actually happened during the Indian Harbor policy period with respect to any specific Brady violation. And more to the point, I think that Mr. Tenenbaum confuses the standard that would be applicable. He talks about a federal notice pleading standard that would be applicable to civil rights actions in federal court, but, of course, that's not the case that we have here. Here we have an insurance coverage case. There are standards of proof with regard to insurance coverage under Illinois law, and I think that's what Judge Ortiz was focusing on. What happened during the Indian Harbor policy period, Brady violation or otherwise? But isn't he alleging and saying there were continuing wrongs by his being continually incarcerated all this time wrongfully? Well, Your Honor, the only response I can make to that is there's been no court anywhere, and they certainly haven't cited to any authority, that would suggest that a general allegation of an ongoing duty without any further allegation of specific acts during the policy period is sufficient to trigger insurance coverage, notwithstanding what may apply in federal court notice pleading standard for a civil rights violation. You're saying that's the case also with the allegation of the conspiracy? Absolutely. Because that would certainly be an agreement that would cover that, right? Absolutely right. The same thing applies. It's a generalized ongoing allegation, but nothing specific, no acts in furtherance of the conspiracy alleged. And there's no authority that says a generalized allegation of conspiracy like that is sufficient to trigger insurance coverage. And, in fact, I think we've got the statute of limitations cases that say that that is triggered from the time of the conspiracy, the initial conspiracy. So with that, what I wanted to do and spend my time focusing on the language of the contracts, and that's the issue here. In deciding an insurance coverage case, of course, the court has to lay the underlying claims complaint alongside the policy. In St. Paul, after establishing the appropriate standard of review, which I think is the same standard applicable here on our motion for judgment on the pleadings, the court noted that the primary task was to ascertain the intent of the parties as expressed in their agreement, which is the language of the policies themselves. The St. Paul case had a general liability section and a law enforcement liability section. Here we only have the law enforcement liability coverage, of course. In St. Paul, the language of the policy and issue focused on injury or damage, as Your Honor has alluded to, and that injury or damage must result from law enforcement activities, must happen within the policy when the policy is in effect, and must be caused by a wrongful act committed while conducting law enforcement activities. The policy in St. Paul defined injury or damage as bodily injury, personal injury or property damage, and defined personal injury as injury caused by malicious prosecution, among other forms of misconduct. The actual language of the policy says personal injury. It doesn't say injury resulting from malicious prosecution. It says personal injury means malicious prosecution. Can't a reasonable argument be made that that is the completed tort of malicious prosecution? No, I don't think so, Your Honor. That was the language, and I was speaking about the language in St. Paul. The insurance agreement in our case is slightly different because it does speak about wrongful act, and I take Your Honor's point that the wrongful act actually precedes the injury. Wrongful act is what we have to focus on in the Indian Harbor policy, so we say that, if anything, the language in our policy is more favorable to the insurer's point of view than the language that the court considered in St. Paul because that was focusing on the injury, and here we focus on the wrongful act, which then results in personal injury, bodily injury, or property damage, and then in turn, the term personal injury is defined to include a variety of the official misconduct, including assault, battery, false arrest, and so on. So under your reading of this policy, if the wrongful act occurred during the policy period, but the injury didn't occur until after the policy period, the policy would still be in effect. Absolutely right, and wrongful act is defined as an actual or alleged error or omission, negligent act, neglect, or breach of duty by an insurer while conducting law enforcement activities. That is what a wrongful act is, and then the injury may happen sometime later, but it's the wrongful act that is the focus of the Indian Harbor policy, so we feel it's even more favorable from the insurer's standpoint than the language that the court considered in St. Paul. The court in St. Paul flatly rejected the security mutual case, as your Honor alluded to, which has been called the Illinois rule and applied upon by the city and Mr. Rivera here. Then the court did look to analogous out-of-state authorities for guidance in determining the appropriate trigger, and the court did consider the New Jersey decision in Mueller Fuel Oil, which spoke of the essence of the tort and malicious prosecution being the wrongful conduct, and found that case instructive because it said that the injury flowed immediately from the wrongful act. But of course, in our case, coverage flows from the wrongful act itself, so again, even more favorable from the standpoint of the insurer. One last word about the court's decision in the St. Paul case, if I may, and that has to do with the court's express admonition that it was limiting its holding to the language of the policy at issue. And of course, we do not see that limitation as applying in this case because the terms of the Indian Harbor policy do not require the offense of malicious prosecution to be committed during the policy period, as your Honors have noted. And that might produce a different result with regard to the trigger of coverage, as the court noted in St. Paul. But in this case, the Indian Harbor policy expressly requires the wrongful acts, giving rise to the subsequent injury, which may come from the offense of malicious prosecution, the brainy violations, the conspiracy, the intentional infliction of emotional distress, and all the rest, during the policy period in order for coverage under the policy to be triggered. Any further questions? Is this policy illusory? No, this policy is not illusory, as the court has already referred to. If the wrongful acts occur during the Indian Harbor policy period, and then an injury happens sometimes later, and then an exoneration may happen sometime after that, of course there's coverage in that instance. Just because there's not coverage for this claim doesn't make a policy illusory. And if I may, insurance companies are used to dealing with long-tail situations all the time. All you have to do is think about an asbestos claim, for example, where someone may be exposed to asbestos decades, many, many decades later, and then there's a manifestation of injury later. Or a medical malpractice claim, where an error is committed and then an injury happens sometime later. Those are long-tail claims. And insurance companies are used to that. So that's not a reason to say that all of the coverage has to depend on this one event of exoneration, or the last element of a tort, for example, as any kind of a matter of public policy. How would the policy have to be worded differently if, in order for coverage of a malicious prosecution claim to be triggered upon exoneration? Would it have to say that specifically? Well, I think the court alluded to it in its St. Paul decision, where it would make the offense of malicious, which would focus on the offense, and then that would be all of the elements of the offense, one might argue. But that's far from what we have here. In fact, if anything, again, our language is we feel more favorable than the language that the court looked at in St. Paul. Offense as opposed to wrongful act, you're saying? Yeah, the wrongful acts, which then give rise to injury and all of the different elements which happen at different points of time and may extend out over a period of many years or decades. But insurance companies and buyers of insurance, for that matter, are very used to dealing with that type of a situation. They deal with it all the time. And Indian Harbor was on notice that this was a potential claim in the policy application. Well, and that would get to an element of fortuity. You can't buy insurance coverage for something that has already happened. And so, yes, they disclosed the situation to Indian Harbor here. But you can't buy insurance coverage for something that's already happened. When the hurricane has already hit, you can't buy insurance coverage for that. And that's what we're saying is the situation here. Insurance requires fortuity, of course. And the wrongful acts giving rise to the injury that was suffered by Mr. Rivera were already complete by the time this coverage was purchased. Thank you. Thank you, Mr. Carter. Mr. Cuddy? Yes. Do you have an argument? No. Were you dividing your time under that level? No. We disagree that the tort was complete. When the policy was purchased, Indian Harbor, Rivera had not been reversed. His convictions had not been reversed. Well, the tort may not have been complete, but was the wrongful act complete? No. Because the wrongful act in the lexicon of law enforcement liability is malicious prosecution. These are ordinary terms that should mean what they say and what is generally understood. The city paid hundreds of thousands of dollars for this law enforcement liability special risk policy, and it included coverage for malicious prosecution. Now, the expectation of the parties has to be taken into account here that it listed not just malicious prosecution but the other torts. That is the expectation. They were buying coverage for activities that occurred in law enforcement. Because in the lexicon, malicious prosecution means I'm going to file charges against you that have no basis in law or fact. No, Your Honor, those are two elements of it, but there are other elements. Well, there's elements of the offense and there's elements of the tort. I understand that. But I'm talking about in the common lexicon, as pointed out by Mueller, the essence is the bringing of the charges without a basis in law and fact. But it is not the completed tort or the completed wrongful act. But the policy doesn't say the completed tort. It doesn't have that language. Your Honor, it uses the language wrongful acts, which is basically the same thing. It's a cause of action. Well, with all due respect, counsel, we're parsing words here purposely. So those are two different words. Cause of action doesn't mean the same thing. That's a word of art. But it's not in the policy. Wrongful acts, Your Honor, the way that it is set forth in the policy, are the terms, the causes of action. Because you see listed, everything that's listed, civil rights violations, malicious prosecution, battery, assault, false arrest, those are causes of action. Humiliation, they are causes of action. The insured is led to believe. Your Honor, this is a specialty risk. You are buying the policy to cover lawsuits. And what would be the meaning if a wrongful act is not a cause of action? What is the meaning? There would be no coverage in this for any causes of action. The whole point is that you are covering yourself for risks that are going to be lawsuits. And in this case, the city got a lawsuit from Rivera. We don't control that. It alleges broad, expansive constitutional torts, as Mr. Tenenbaum brought up, that ranged from the day of his arrest until the day that he walked out of jail. And they're separate and independent torts. I think that it is truly fundamentally wrong to collapse all of these into one cause of action, which essentially is the arrest. And this is a lot different than the case in St. Paul that this Court just decided. The underlying facts in that were a lot different. Jerry Hobbs was never tried and convicted. He was in jail for five years. The gravamen of his complaint was the interrogation that occurred at the time, right before the charges were filed. I can understand why the Court said that is when the wrongful acts or the injury occurred. But that's not this case. This is a completely different case. Juan Rivera was tried and convicted three times. And so the malicious prosecution did not occur until he was finally, he received the final satisfactory term of reversal of his convictions. So at this point, I mean, it is a completely different case. So theoretically, if you had 20 different insurers during this 20-year time span, each one of those insurers has a duty to defend right now. 20 different insurers right now has a duty to defend. We obviously give notice to 20 different insurers. Of course, according to the reading of the policy, they all. If they all had the same policy, they would all have a duty to defend. It depends. I mean, if there's a tort that is occurring, now, for sure. I don't know what this ongoing argument that you just made, the ongoing Brady violation, all that. That's Mr. Tenenbaum's argument. I mean, my argument is a little bit different, that there are independent discrete torts that have to be looked at. So those you can determine. May I just finish that, Jan? You can determine a point in time. You can determine when the false arrest occurred. You can determine when he was tried for the second time, when he was tried for the third time, when he was reversed. Those are discrete independent dates that you can say a tort occurred on these days. The continuing violation is something a little bit separate from what I'm arguing. So if there are no further questions, Your Honor, thank you. And we ask for reversal and a finding that Indian Harbor has a duty to defend. We would like to thank all the attorneys for their arguments in this case. It's a very interesting case. The briefs were very well done. And the case will be taken under advisory. Thank you.